IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.                                                                                  23-CR-6178 FPG

JOHNMICHAEL SANTIAGO,

        Defendant.

---



## PLEA AGREEMENT

The defendant, **JOHNMICHAEL SANTIAGO**, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a three-count Information which charges:

    a.    In Count 1, a violation of Title 18, United States Code, Section 231(a)(3) (civil disorder), for which the maximum possible sentence is a term of imprisonment of 5 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years; and

    b.    In Counts 2 and 3, violations of Title 18, United States Code, Sections 111(a)(1) and 111(b) (assault of a federal officer), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.

  c. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

  2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 6 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

  3. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

### Count 1 – 18 U.S.C. § 231(a)(3)

First, that a civil disorder existed at the time alleged in Count 1 of the Information;

Second, that such civil disorder obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce in any way or degree;

Third, that the defendant committed an act or attempted to commit an act to obstruct, impede, or interfere with any law enforcement officer engaged in the lawful performance of his or her official duties incident to and during the commission of the civil disorder; and

Fourth, that such act or attempt to act was done willfully and knowingly.

"The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

"The term 'law enforcement officer' means any officer or employee of . . . any State [or] any political subdivision of a State . . . while engaged in the enforcement or prosecution of any of the criminal laws of . . . a State [or] any political subdivision of a State." 18 U.S.C. § 232(7).

"The term 'commerce" means commerce (A) between any state . . . and any place outside thereof . . ." 18 U.S.C. § 232(2)(A).

## Counts 2 and 3 – 18 U.S.C. § 111(a)(1)

First, that on or about the date specified in the Information, the victim was a federal officer;

Second, the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with the victim and this forcible action involved actual physical contact with the victim;

Third, that at the time, the victim was engaged in the performance of his official duties or the victim was assaulted on account of the performance of their official duties;

Fourth, that the defendant acted willfully; and

Fifth, that the defendant's actions resulted in bodily injury.

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

3

## Count 1 – 18 U.S.C. § 231(a)(3)

a. On or about September 5, 2020, in the City of Rochester, in the Western District of New York, the defendant, **JOHNMICHAEL SANTIAGO**, committed, and attempted to commit, an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected commerce and the movement of any article or commodity in commerce, in violation of 18 U.S.C. § 231(a)(3).

b. On or about September 2, 2020, it was publicly revealed that Daniel Prude died on March 30, 2020, one week after an encounter with Rochester Police Department (RPD) officers. In the wake of that public disclosure, there were nights of violent protests in the City of Rochester that resulted in property damage and physical injury to several RPD police officers. During the protests on September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants in the City of Rochester, causing numerous patrons to leave. In connection with the protests on September 5, 2020, law enforcement shut down Exit 14 on Interstate 490 in the City of Rochester, which is the exit for Broad Street and Plymouth Avenue near RPD headquarters, for approximately eight hours and the State Street exit on the Inner Loop in the City of Rochester for approximately an hour.

c. During the evening of September 5, 2020, a group of approximately 1,500 protesters gathered near RPD headquarters, which is located at 185 Exchange Boulevard in the City of Rochester. Once the group arrived, they gathered at the intersection of Broad Street and Exchange Boulevard (which is located a block north of RPD headquarters), where they blocked all lanes of traffic on Broad Street and all lanes of traffic on Exchange Boulevard between Broad Street and Main Street. RPD officers manned metal barricades on the south side of the intersection of Broad Street and Exchange Boulevard. The group extended from the intersection of Broad Street and Exchange Boulevard to the intersection of State Street and Main Street. At various times over the course of approximately two hours, some members of the group hurled rocks, bottles, lit fireworks, and other objects at police officers standing on the southern side of the intersection of Broad Street and Exchange Boulevard. Some members of the group also shined flashlights and pointed lasers at the police officers. The group was repeatedly asked by an RPD sound truck to move onto the sidewalks and leave the area or be subject to arrest for Disorderly Conduct for impeding traffic. After RPD repeatedly directed the group to leave the area, several members of the group disregarded those messages, remained in the streets, and continued to block the intersections. The defendant admits and agrees

4

that the actions of the group on September 5, 2020, constituted a civil disorder within the meaning of 18 U.S.C. § 232(1), and that such civil disorder obstructed, delayed, and adversely affected commerce within the meaning of 18 U.S.C. § 232(2).

d. On September 5, 2020, sometime after 11:00 p.m., the defendant was present with the group of protesters at the intersection of State Street and Main Street. At that time, the defendant possessed fireworks, including mortar-style fireworks. Another individual whose identity is known to the parties lit one of the defendant's mortar-style fireworks and handed it to the defendant. The defendant then threw the ignited firework at a line of uniformed RPD officers as they attempted to address and control the crowd at the intersection of State Street and Main Street. The firework detonated in the immediate vicinity of the uniformed RPD officers, causing a loud explosion and creating a risk of serious injury to the officers. The defendant fled the area on foot and was not apprehended by law enforcement that night.

e. On or about October 14, 2020, members of law enforcement interviewed the defendant. During the interview, the defendant admitted, in sum and substance, that he attended the protests on September 4, 2020, and September 5, 2020, and that on the night of September 5, 2020, he brought fireworks, including four mortar-style fireworks, to the protests. During the interview, the defendant also admitted he provided several fireworks in exchange for approximately $20.00 to a person he did not know and provided fireworks to others without payment. During the interview, the defendant admitted that he threw an ignited mortar-style firework at police officers after the person known to the parties lit the firework and handed it to the defendant.

f. The fireworks thrown by the defendant at RPD officers and possessed by the defendant at the time of his arrest were commercial grade fireworks and they contained nitrate and perchlorate explosive mixtures, which are classified as explosives under federal law.

### Counts 2 and 3 – 18 U.S.C. § 111(a)(1)

g. On or about February 28, 2023 in Livingston County, Western District of New York, the defendant did willfully and forcibly assault, resist, oppose, impede, intimidate and interfere with Livingston County Sheriff's Deputies J.M. and D.K. causing actual physical contact with Deputies J.M. and D.K., who were engaged in the performance of their official duties at the Livingston County Jail, where they were assisting the United States Marshal's Service in the performance of its official duties to maintain custody of federal prisoners. The defendant's actions caused bodily injury to Deputies J.M. and D.K.

5

h. On May 17, 2022, the defendant was charged in a criminal complaint which alleged that on or about September 5, 2020, in the City of Rochester, County of Monroe, Western District of New York, the defendant knowingly and intentionally obstructed, impeded and interfered with law enforcement officers who were engaged in the lawful performance of their official duties, by throwing a lit mortar-style, commercial firework toward uniformed RPD officers and that these actions occurred during a civil disorder that obstructed, delayed and adversely affected interstate commerce, in violation of Title 18, United States Code, Section 231(a)(3). On February 28, 2023, the charge was pending in the United States District Court for the Western District of New York and the defendant was in the custody of the United States Marshal's Service and was housed in the Livingston County Jail, Geneseo, New York.

i. On February 28, 2023, at approximately 12:08 p.m., Livingston County Sheriff's Deputies J.M. and D.K. were organizing a facility movement of inmates to attend an offered program. A group of inmates were to be escorted from the B-Pod housing unit to a classroom located in a separate part of the facility. To attend the program, inmates were to sign up prior to being placed on the attendance list. The defendant attempted to join the group of inmates being transported to the classroom. Deputy J.M. informed the defendant that he was not on the list.

j. The defendant then picked up a hard plastic cup and threw it at Deputy J.M. striking him in the side of his left leg. The defendant then ran up several stairs onto the "Deputy Station" which is a restricted area to inmates. The defendant charged at Deputy J.M., took a fighting stance, and struck Deputy J.M. in the left side of his jaw with a closed handed fist. Deputies J.M. and D.K. began to wrestle the defendant in an attempt to get him under control. The defendant pushed Deputy D.K. down several stairs from the Deputy Station. The defendant continued to resist the deputies while wrestling on the ground. Deputy D.K. performed a "drive stun" technique using an issued taser, to the side of the defendant. The defendant then fell down several stairs onto his stomach. Deputies were able to gain control of the defendant and he was escorted out of B-Pod housing unit.

k. As a result of the altercation, Deputy J.M. sought medical treatment at UR Medicine, Noyes Health Urgent Care, in Geneseo, New York, and was treated for a contusion of his jaw, contusion of his left thigh, an injury to his head, and a concussion (without loss of consciousness). As a result of the altercation, Deputy D.K. sought medical treatment at UR Medicine, Saint James Urgent Care, in Hornell, New York, and was treated for lower back pain and was diagnosed with back spasms/back

strain. Deputy D.K. has a history of prior back spasms, however, his back discomfort was aggravated by the altercation with the defendant.

1. Deputies J.M. and D.K. are employees designated under 18 U.S.C. § 1114 and were supervising the defendant as part of their official duties. The United States Marshal Service is generally responsible for custody and security of federal inmates who are awaiting the resolution of their federal charges. The United States Marshal's Service maintains a contract with the Livingston County Jail governing the housing of federal inmates at the Livingston County Jail who are detained while charges are pending against them in the United States District Court for the Western District of New York, as was the case with the defendant. Deputies J.M. and D.K. are employed by the Livingston County Sheriff's Office at the Livingston County Jail. Deputies J.M. and D.K. possess employment responsibilities of maintaining the welfare and security and custody and well-being of those detained in the Livingston County Jail, including federal detainees like the defendant. The activities in which Deputies J.M. and D.K. were engaged and which are described herein were being conducted pursuant to their official duties as Livingston County Jail Deputies and they were assisting the United States Marshal's Service in the performance of its official duties to maintain custody of federal prisoners.

## III.    SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

6. Regarding Count 1, the government and the defendant agree, pursuant to Guidelines § 1B1.2(a), that the defendant's sentencing range for imprisonment and a fine shall be determined as if the defendant was convicted of a violation of 18 U.S.C. § 844(d) (receipt of explosive in interstate commerce with knowledge or intent it will be used to injure or intimidate any individual).

## BASE OFFENSE LEVEL

7. Regarding Count 1, the government and the defendant agree that Guidelines § 2K1.3(a)(5) applies to the offense of conviction and provides for a base offense level of 12.

8. Regarding Counts 2 and 3, the government and the defendant agree that Guidelines § 2A2.4(a) applies to the offenses of conviction and provides for a base offense level of 10 for each of those counts.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

9. The government and the defendant agree that the following specific offense characteristic applies to Count 1:

   a. a six-level increase to offense level 18 pursuant to Guidelines § 2K1.3(b)(3)(B) (use or possession of explosive material in connection with another felony offense).

10. The government and the defendant agree that the following specific offense characteristics apply to Counts 2 and 3 of the information.

   a. a three-level increase pursuant to Guidelines § 2A2.4(b)(1)(A) (offense involving physical contact); and

   b. the two-level increase pursuant to Guidelines § 2A2.4(b)(2) (victim sustained bodily injury).

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

11. The government and the defendant agree that the following adjustment to the base offense level applies to Count 1:

   a. the three-level increase of Guidelines § 3A1.2(a) (official victim).

## ADJUSTED OFFENSE LEVEL

12.     Based on ¶¶ 7 through 11 of this agreement and Guidelines § 3D1.4, it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is 23.

## ACCEPTANCE OF RESPONSIBILITY

13.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 20.

## CRIMINAL HISTORY CATEGORY

14.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

15.     It is the understanding of the government and the defendant that, with a total offense level of 20 and criminal history category of I, the defendant's sentencing range would be **a term of imprisonment of 33 to 41 months, a fine of $15,000 to $150,000, and a period of supervised release of 1 to 3 years.** Notwithstanding this, the defendant understands that

9

at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

16. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

17. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

18. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

### IV.   STATUTE OF LIMITATIONS

19. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period

of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. REMOVAL

20. The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND OBLIGATIONS

21. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement, including the amount of a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

22. At sentencing, the government will move to dismiss the Criminal Complaints pending against the defendant under Magistrate's Number. 22-MJ-4059 and 23-MJ-4059.

23. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

24. Pursuant to Title 18, United States Code, Section 3663(a)(3), the parties agree that the Court shall require restitution in an amount not to exceed $100 to be paid to Deputy J.M. in this case, as part of the defendant's sentence. The defendant understands that the defendant will not be entitled to withdraw the pleas of guilty based upon any restitution amount ordered by the Court.

## VIII. APPEAL RIGHTS

25. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than **a term of imprisonment of 33 to 41 months, a fine of $15,000 to $150,000, and a period of supervised release of 1 to 3 years**, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed $100.

26. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the

future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

27.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than **a term of imprisonment of 33 to 41 months, a fine of $15,000 to $150,000, and a period of supervised release of 1 to 3 years**, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.   TOTAL AGREEMENT AND AFFIRMATIONS

28.     This plea agreement represents the total agreement between the defendant, **JOHNMICHAEL SANTIAGO**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
CHARLES E. MOYNIHAN
Assistant United States Attorney

Dated: May 16, 2024

I have read this agreement, which consists of pages 1 through 14. I have had a full opportunity to discuss this agreement with my attorney, Jeffrey L. Ciccone, Esq. I agree that it represents the total agreement reached between me and the government. No promises or

representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
JOHNMICHAEL SANTIAGO  
Defendant

Dated: May ___, 2024

_____  
JEFFREY L. CICCONE, ESQ.  
Attorney for the Defendant

Dated: May 16, 2024